UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION, INC., a Virginia corporation,
2021 L Street N.W., 5th Floor
Washington, D.C. 20036

and

NATIONAL FOOTBALL LEAGUE PLAYERS
INCORPORATED, a Virginia corporation
2021 L Street N.W., 5th Floor
Washington, D.C. 20036

       Plaintiffs,

v.

PAYDAY SPORTS, INC., a Delaware corporation
19 Hayloft Circle
Wilmington, DE 19808

       Defendant

CASE NO.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

_____

## COMPLAINT

Plaintiffs National Football League Players Association, Inc. ("NFLPA") and National Football League Players Incorporated ("PLAYERS INC"), for their Complaint against Defendant Payday Sports, Inc. ("Payday"), allege as follows:

### NATURE OF THE COMPLAINT

1.    The District of Columbia has long recognized the common law tort of appropriation of name or likeness which allows that one who appropriates the name or likeness

of another for his own benefit is subject to liability for invasion of privacy. The interest protected by this rule is the interest of an individual in the exclusive use of his own identity, as that identity is represented by his name or likeness, and in so far as the use may be of benefit to him or to others. Because the right created by this rule is in the nature of a property right, an exclusive license may be given to a third person for the exercise of this right which will entitle the licensee to maintain an action to protect it.

2. This complaint seeks equitable and monetary relief to remedy the injuries caused to NFLPA and PLAYERS INC (collectively "Plaintiffs") by Payday's commercial operation of "fantasy football" games ("Payday Sports National Fantasy Football Tournament" and "Payday Sports Salary Cap League" collectively, "Payday Fantasy Football") through an Internet website, www.paydaysports.com, as well as through various live events. As set forth more fully herein, Paydays's use of the names, statistics and/or other biographical information (the "Images") of six or more current and/or former National Football League players ("NFL Players") violates the exclusive group licensing rights assigned by the NFL Players to Plaintiffs.

## THE PARTIES

3. Plaintiff NFLPA, an incorporated non-profit association that represents NFL Players, is a Virginia corporation with its principal place of business at 2021 L Street N.W., 6th Floor, Washington, D.C. 20036.

4. Plaintiff PLAYERS INC is a Virginia corporation with its principal place of business at 2021 L Street N.W., 5th Floor, Washington, D.C. 20036. PLAYERS INC is a for-profit subsidiary of the NFLPA and, among other things, is engaged in the business of licensing intellectual property rights of NFL Players.

5. Defendant Payday is a Delaware corporation with its principal place of business at 19 Hayloft Circle, Wilmington, DE 19808.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a)(2), in that the claims asserted herein involve citizens of different states and the controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (c) because Defendant Payday is subject to personal jurisdiction in this District under D.C. Code §13-423(a)(1).

## BACKGROUND

### Plaintiffs' Exclusive Group Licensing Rights

8. Under paragraph 4(b) of the collectively bargained NFL Player Contract, (a copy of which is annexed hereto as <u>Exhibit A</u>) the vast majority of Players expressly assign to the NFLPA all of their "group licensing" rights, as follows:

> Player hereby assigns to the NFLPA and its licensing affiliates, if any, the exclusive right to use and to grant to persons, firms, or corporations (collectively "licensees") the <u>right to use his name, signature facsimile, voice, picture, photograph, likeness and/or biographical information (collectively "image")</u> in group licensing programs. Group licensing programs are defined as those licensing programs in which a licensee utilizes a total of six (6) or more NFL player images on or in conjunction with products (<u>including, but not limited to</u>, trading cards, clothing, videogames, computer games, collectibles, <u>internet sites, fantasy games</u>, etc.) that are sold at retail or used as promotional or premium items. . . The terms of this subparagraph apply unless, at the time of execution of this contract, Player indicates by striking out this subparagraph (b) and marking his initials adjacent to the stricken language his intention

> not to participate in the NFLPA Group Licensing Program. . . .
> (emphasis added.)

9. The NFLPA holds such rights in connection with virtually 100% of all NFL players. These group licensing rights are then licensed to PLAYERS INC, which has the right to enter into licensing contracts for products, services and sponsors.

10. In addition to the NFL Player Contract, Players also execute separate Group Licensing Assignments ("GLAs" a copy of an example of which is attached hereto as Exhibit B), which are agreements between each Player and the NFLPA, pursuant to which the Player's group licensing rights are assigned to the NFLPA.

11. Among other things, the GLA provides, in relevant part that:

> The undersigned player, a member of the National Football League Players Association ("NFLPA"), hereby assigns to the NFLPA and its licensing affiliates, if any, the exclusive right to use and to grant to persons, firms, or corporations (collectively "licensees") the <u>right to use his name, signature facsimile, voice, picture, photograph, likeness and/or biographical information (collectively "image") in group licensing programs.</u> (Emphasis added).

12. The GLA also explicitly defines "group licensing programs":

> Group licensing programs are defined as those <u>licensing programs in which a licensee utilizes a total of six (6) or more NFL player images in conjunction with or on products that are sold at retail or used as promotional or premium items</u>. (Emphasis added.)

13. The GLA expressly provides:

> The undersigned player retains the right to grant permission to a licensee to utilize his image if that licensee is not concurrently utilizing the images of five (5) or more NFL players in conjunction with or on products that are sold at retail or are used as promotional or premium items.

14. The GLA obligates the NFLPA to use its best efforts "to ensure that no entity engages in a group licensing program without first obtaining a license from the NFLPA."

15. The GLA provides that it shall be construed under New York law.

**The Group Licensing Rights Provided For In The GLA And The NFL Player Contract As Applied To Fantasy Football Games and Internet Uses of Player Images**

16. Currently, PLAYERS INC grants licenses to hundreds of companies in the United States and throughout the world to use various aspects of its group licensing rights in connection with commercial products including fantasy football and other interactive games, websites, trading cards, memorabilia, and apparel.

17. PLAYERS INC currently licenses player names and identifying characteristics to approximately fifteen proprietors of fantasy football games advertised and conducted in print and online formats. These games, through their use of player characteristics, generate millions of dollars in revenue each year for the licensed companies. PLAYERS INC earns royalties based on the sales of these games.

18. Examples of PLAYERS INC's extensive history of licensing in connection with fantasy football games include, without limitation, the following:

- a July 27, 1994 license agreement with CDM Fantasy Sports;
- a June 30, 1995 license agreement with Sportsline USA, Inc., a division of CBS Broadcasting Inc.;
- a July 28, 1997 license with Sandbox Entertainment;
- an August 5, 1997 license agreement with Small World Sports;
- an August 12, 1997 license agreement with All Sports Entertainment, Inc.;
- an August 6, 1999 license agreement with STATS, Inc.;
- a January 20, 2000 license agreement with Electronic Arts, Inc.;
- a January 26, 2001 license agreement with NFL Properties, Inc.;
- a July 9, 2001 license agreement with SportingNews.com, Inc, a division of Fox Interactive Television LLC;
- an August 31, 2002 license agreement with WhatIfSports.com, Inc.;
- a February 28, 2003 license agreement with ABC, Inc.;

- a June 22, 2005 license agreement with Fox Sports Interactive Media;
- a Jun 22, 2005 license agreement with Pro Trade, Inc.;
- a June 22, 2005 license agreement with America Online, Inc.

19. In addition to this extensive licensing history and commercial acknowledgement of Plaintiffs' licensing rights, Plaintiffs' rights have also been confirmed in federal court. In Gridiron.com v. National Football League, Player's Association, Inc. and National Football League Players, Inc., 106 F. Supp. 2d 1309 (S.D. Fla. 2000), the NFLPA and PLAYERS INC were awarded summary judgment against the operator of a website utilizing Player Images in connection with, among other things, a fantasy football game. The Court explicitly noted that the use of Player Images in a fantasy football game on the website violated Plaintiffs' exclusive group licensing rights.

20. In short, there is an established history which reflects that the Plaintiffs' exclusive group licensing rights cover the type of use of NFL Player Images engaged in by Payday.

**The Payday Website: www.paydaysports.com**

21. The Payday website, www.paydaysports.com, in connection with Payday Fantasy Football, uses the Images of six or more NFL Players, including NFL Players who have executed both an NFL Player Contract and a GLA. Among other things, the Payday website uses the names of NFL Players to create a game for which they charge fees. The use of NFL Player Images by Payday in connection with its fantasy football games violates right of the NFLPA and PLAYERS INC to use the names or likenesses of six (6) or more NFL Players as licensed to the NFLPA and PLAYERS INC by the NFL Players through the GLA and the NFL Player Contract. Payday is using the Images of NFL Players under contract to Plaintiffs in a "group licensing program", which includes the use of " . . . six (6) or more NFL Player images on or in conjunction with products (including but not limited to . . . internet sites, fantasy games, etc.) that

are sold at retail or used as promotional or premium items" in direct violation of Plaintiffs' exclusive rights as set forth in the GLA, as well as the NFL Player Contract.

22.     The Payday website entices users to pay a fee of $100.00 to enter a team in the "Payday Sports Salary Cap League" or $3600.00 to enter the "Payday Sports National Fantasy Football Tournament" and participate in the live draft event to compete for cash prizes by assembling and managing teams of NFL Players whose performance in the game tracks the actual performance of the NFL Players over the course of the NFL season.

23.     Users who visit www.paydaysports.com begin at a "homepage" welcoming users to "Payday Sports – The Original Atlantic City High-Stakes Fantasy League.  The Fantasy League That Could Change Your Life Forever!'" and inviting them to compete in the "Payday Sports Salary Cap League" by sending in the $100.00 entrance fee or pay $3600.00 to compete in the "Payday Sports National Fantasy Football Tournament" and travel to a hotel in Atlantic City, New Jersey in order to participate in a live draft for that high-stakes game.  Excerpts from the Payday website are attached hereto as Exhibit C.

24.     Once the user has paid the entry fee and registered a team name, the user may log onto the website, and view a "players page" in which the user can see a list of all of the players on his team, lists of players by position and team standings, statistics, and fantasy points earned.  This is also the page used for the buying and selling of all players.  Excerpts from the Payday website are attached hereto as Exhibit D.

25.     From the "players page" the user can also use the menu to navigate to other pages such as a "team news page" listing the players on the user's team and the news about each player, as well as view the list of players in the user's "trade history" and conduct research on various players.  Excerpts from the Payday website are attached hereto as Exhibit E.

26. Each week through the website, the "owner" of a fantasy team checks the website the day after an NFL football game has been played to see the performance of the players on the roster, to check the points earned based on the selected players' performance in the actual NFL football games, and to "trade" players for the next week's NFL football game.

27. Through its website and its live draft events Payday uses six or more NFL Player Images as defined in the NFL Player Contract and the GLA.

## Damage Caused By Payday

28. As demonstrated by the foregoing paragraphs, the group licensing business of PLAYERS INC has become an extremely successful venture that is at the core of PLAYERS INC's and the NFLPA's very existence. The success of the group licensing business, however, is not attributable solely to the personal achievements of, and personas created by, the NFL Players themselves. Rather, the current success and popularity of the group licensing business is due, in large part, to the skillful and professional manner in which the NFLPA, and then PLAYERS INC, has managed the NFL Players' exclusive group licensing rights. Indeed, both the NFLPA and PLAYERS INC have taken great pains to direct the licensing of NFL Player attributes in a manner that creates demand for NFL Player attributes while generating revenue for all NFL Players.

29. By using attributes belonging to NFL Players on the Payday-operated website without authorization from the NFLPA or PLAYERS INC, Payday has caused, is causing and threatens to cause economic damage to Plaintiffs by diverting business from authorized licensees, depriving the Plaintiffs of licensing fees to which they are entitled for use of the their exclusive group licensing rights, and by creating potential and actual conflicts with already existing licensees for fantasy football and Internet use. In addition, by engaging in the

unauthorized use of NFL Players' attributes on the Payday website, Payday is usurping the goodwill associated with, and the commercial value of, the NFLPA's and PLAYERS INC's exclusive group licensing rights – goodwill and value which the NFLPA and PLAYERS INC have carefully developed, nurtured and guarded through the investment of significant time, energy and money over many years.

### Payday's Refusal To Obtain A License

30. After becoming aware of the unauthorized use of NFL Player Images by Payday, on August 19, 2004 PLAYERS INC wrote to Mr. David Cella, one of the owners of Payday, and informed him that his use of NFL Player Images was infringing and required a license.

31. On September 2, 2004 counsel for Payday replied to PLAYERS INC that they did not believe that the operation of the Payday fantasy football games required a license, and that even if it did, PLAYERS INC had "not provided any evidence that Players Inc. possesses the exclusive right to license such information."

32. On September 8, 2004 PLAYERS INC again wrote to Payday, asking that Payday cease and desist the marketing and sale of Payday fantasy football games featuring active NFL Players.

33. On September 13, 2004 PLAYERS INC responded to counsel for Payday providing Paragraph 4(b) of the standard NFL Player Contract as documentation demonstrating the legal basis for PLAYERS INC's exclusive right to license the names and other identifying characteristics of NFL Players. Again, PLAYERS INC demanded that Payday immediately cease its operation of the fantasy football games using NFL Players.

34. Notwithstanding having been advised in writing that its activities were in violation of Plaintiffs' exclusive group licensing rights, Payday continues to use the Images of

six or more NFL Players on the Payday website and in fantasy football games and live draft, including NFL Players in connection with whom Plaintiffs' hold exclusive group licensing rights.

## I.
## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

35. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 34 as if fully set forth herein.

36. An actual controversy within this Court's jurisdiction exists between Plaintiffs and Payday in that:

   a. Plaintiffs have demanded that Payday cease and desist from using six or more NFL Player Images, where Plaintiffs hold the exclusive group licensing rights in connection with at least one of such NFL Players, on the Payday website and in fantasy football games in violation of exclusive group licensing rights held by the Plaintiffs;

   b. To date, Payday has refused to cease and desist from its infringing activities;

   c. The course of conduct taken by Payday has created a reasonable apprehension that the exclusive group licensing rights held by the Plaintiffs will continue to be violated.

37. Accordingly, Plaintiffs are entitled to a declaratory judgment that Payday's use of six or more NFL Player Images, where Plaintiffs hold the exclusive group licensing rights in connection with at least one of such NFL Players, on the Payday website and in fantasy football games, violates Plaintiffs' exclusive group licensing rights.

## II.
## SECOND CLAIM FOR RELIEF
### (The Common Law Tort of Appropriation of Name or Likeness)

38.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39.     Plaintiffs are the exclusive assignees of NFL Players' rights to use or license their Images in programs which utilize six or more NFL Player Images on or in conjunction with products that are sold at retail or used as promotional or premium items.

40.     The use by Payday of the NFL Player Images, for whom Plaintiffs hold exclusive group licensing rights, on the Payday website fantasy football games is so directly connected with the commercial sponsorship of the Payday fantasy football games as to constitute a use for advertising purposes or for a commercial purpose for which written consent of the Plaintiffs, as the exclusive assignees of NFL Players' rights to use or license their Images in group licensing programs, is required by the common law of the District of Columbia.

41.     Payday's knowing use on the Payday website and in fantasy football games of the Images of NFL Players for whom Plaintiffs hold exclusive group licensing rights, without Plaintiffs' written consent, constitutes a violation of the common law rights under the law of the District of Columbia, of which Plaintiffs are the exclusive assignees.

42.     Plaintiffs have been injured by virtue of Payday's use of NFL Player Images, in violation of Plaintiffs' exclusive rights, under the common law of the District of Columbia and are entitled to recover compensatory damages for such injury, including but not limited to an amount which would have been a reasonable royalty; punitive or exemplary damages under the common law of the District of Columbia; as well as attorney's fees.

43. Plaintiffs are also entitled equitable relief in the form of an injunction prohibiting Payday from using the Images of NFL Players in connection with whom Plaintiffs hold exclusive group licensing rights on the Payday website and/or in the Payday Fantasy Football games in a group licensing program, and from taking any other action in violation of Plaintiffs' exclusive rights.

44. Plaintiffs are also entitled to recover all profits of Payday attributable to its violation of Plaintiff's exclusive rights under the common law of the District of Columbia.

### III.
### THIRD CLAIM FOR RELIEF
### (Injunction)

45. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. Plaintiffs will suffer irreparable injury unless an injunction is issued barring Payday from using six or more NFL Player Images or taking any other action inconsistent with or in violation of Plaintiffs exclusive group licensing rights.

47. Plaintiffs have no adequate remedy at law.

48. Payday will suffer no cognizable damage if such an injunction is issued because Payday has no right to violate the exclusive licensing rights of Plaintiffs.

49. The issuance of the requested injunction would not be adverse to public interest.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for the following relief:

1. A declaration that the use by Payday of the Images of NFL Players in connection with whom Plaintiffs hold exclusive group licensing rights violates Plaintiffs' exclusive group licensing rights;

2. An award of compensatory and punitive damages to Plaintiffs in an amount to be determined at trial;

3. A permanent injunction prohibiting Payday from using the Images of NFL Players on the Payday website and/or in fantasy football games in connection with which Plaintiffs hold exclusive group licensing rights, or from taking any other action that is inconsistent with, or in violation of, Plaintiffs' exclusive group licensing rights;

4. An award in the nature of disgorgement of all profits of Payday attributable to its violations of Plaintiffs' exclusive rights; and

5. Such additional and further relief, at law and in equity, as the Court deems to be just and proper.

## JURY DEMAND

Plaintiff, by and through its attorneys, hereby demands a trial by jury on all claims otherwise triable by jury asserted in the complaint.

Dated: Washington, D.C..
October ____, 2005

                    Respectfully submitted,

By: /s/ David A. Hickerson

David A. Hickerson (D.C. Bar No. 414723)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street N.W., Suite 900
Washington, D.C. 20005
(202) 682-7000

and

Bruce S. Meyer
Jessica D. Lubarsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Plaintiffs NFLPA and PLAYERS INC